# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ESTATE OF JESSE BINAM, BY AND THROUGH ITS PERSONAL REPRESENTATIVE, CONNIE KENDALL,
E.C., BY AND THROUGH HER NEXT FRIEND, JENNIFER CHISHOLM,

    Plaintiffs,

v.

CORRECT CARE SOLUTIONS, LLC d/b/a WELLPATH LLC,
BOARD OF COUNTY COMMISSIONERS OF MESA COUNTY,
SHERIFF MATT LEWIS in his individual an official capacity,
CAPTAIN ART SMITH in his individual and official capacity,
LIEUTENANT FOG in his individual and official capacity,
SERGEANT PECK, in his individual and official capacity,
HEATHER STANFORD, RN, HSA, in her individual and official capacity,
VELDA HAVENS, LPN, in her individual and official capacity,
KURTIS HOLMES, DO, in his individual and official capacity,
SCOTT CURTIS WILSON, LPC, in his individual and official capacity,
LISA MARIE FABRIZIO, RP, in her individual and official capacity,
KIMBERLY SPANGRUDE, NP, in in her individual and official capacity,
MELEAH THRAILKILL, RN, in her individual and official capacity,
NICK JELLOTS, in his individual and official capacity,
ALISSA EMBREE-NICHOLSON, RN, in her individual and official capacity,
MEGAN SMITH, LPN, in her individual and official capacity,
RENEE WORKMAN, RN, in her individual and official capacity,
BRITANY GOSS, RN, in her individual and official capacity,
LEXI LAMBERT, MA/LNA, in her individual and official capacity,
KATELYNN HUNT, MA/LNA, in her individual and official capacity,

    Defendants.

## COMPLAINT FOR DAMAGES AND JURY DEMAND

COME NOW the above-named Plaintiffs, by and through their attorney Cheryl Trine of Trine Law Firm LLC, and allege and complain as follows:

**JURISDICTION**

1. This is an action for damages and attorney's fees and costs, for the violation of Jesse Binam's civil rights, and for his wrongful death. Jurisdiction is invoked under Title 42 U.S.C. §§ 1983 and 1988, and the Eighth and Fourteenth Amendments to the Constitution of the United States.

2. This Court has supplemental jurisdiction to consider state causes of action under 28 U.S.C.A. §1367, for ancillary state claims which "form part of the same case or controversy" as other counts for which this Court has established jurisdiction.

**VENUE**

3. Venue properly lies in the District of Colorado pursuant to 28 U.S.C. §1391(b).

**PARTIES**

4. Plaintiff Connie Kendall is a resident of the state of Utah, a citizen of the United States, the mother of decedent, Jesse Binam, and the Personal Representative of his Estate.

5. Plaintiff E.C. is a resident of the state of Colorado, a citizen of the United States, a minor, and the biological daughter of decedent Jesse Binam.

6. Next Friend Jennifer Chisholm is a resident of the state of Colorado, a citizen of the United States, the biological half-sister of Jesse Binam, and the adoptive mother of E.C.

7. Decedent, Jesse Binam was a resident of the state of Colorado, a citizen of the United States at all times material.

8. Defendant Board of County Commissioners of Mesa County (Mesa County) is the public entity responsible for Mesa County and the Mesa County Detention Center (MCDC). The Board of County Commissioners for the County of Mesa is the proper entity to be sued under 42 U.S.C. § 1983.

9. Defendant Correct Care Solutions LLC, d/b/a Wellpath LLC is a Delaware corporation with a principal place of business in Nashville, Tennessee. It has been registered to do business in Colorado since 2010.

10. At all times material, Defendant Sheriff Matt Lewis was responsible for managing, operating, and administering the Mesa County Detention Center, and he delegated his authority to Defendant Captain Art Smith.

11. At all times material, Defendants Lewis, Smith, Fog and Peck were employees of Mesa County, acting under color of state law, and within the course and scope of their employment.

12. Kurtis Holmes DO is licensed to practice medicine in Colorado, specializing in family medicine, and at all times material was acting under color of state law. In November of 2016, the Colorado Medical Board issued a letter of admonition to Dr. Holmes for providing care and treatment that fell below the standard of care.

13. Scott Curtis Wilson is Licensed Professional Counselor with a business address in Kansas, and at all times material was acting under color of state law.

14. Defendant Lisa Marie Fabrizio is a Registered Psychotherapist who at all times material was acting under color of state law.

15. At all times material hereto, the Defendant nurses were licensed to practice nursing in Colorado.

16. At all times material hereto, Defendants Dr. Holmes, the Defendant nurses, and the Defendant mental health professionals were employees and/or agents of CCS, acting within the course and scope of their employment and acting under color of state law.

17. CCS d/b/a Wellpath was at all times material acting under color of state law.

18. Sheriff Matt Lewis is a final policy maker for Mesa County, who at times delegated his authority to CCS and/or to Mesa County employees, including but not limited to Captain Smith.

19. At all times material, Mesa County had a non-delegable duty to provide detainees including Mr. Hartwell with necessary medical care and treatment from qualified medical providers that meets a community standard of care.

20. To the extent Mesa County delegated authority to make official policy decisions to CCS, either expressly or by default, the policies and customs of CCS become the policies and customs of the county, and the county is liable for their actions if the policy proves unconstitutional.

21. Nurses licensed to practice in Colorado are required to adhere to the Nurse Practice Act, which requires LPNs to complete a 9 to 11-month course, after which they are qualified to "identify normal from abnormal in each of the body systems and to identify changes in the patient's condition, which are then reported to the RN or MD for further or 'full' assessment."

22. RNs supervise LPNs, and cannot delegate nursing assessments to LPNs.

23. Based on information and belief, Defendant Heather Stanford, RN is the Health Services Administrator (HSA) for CCS at Mesa County Detention Center, responsible for hiring, training, scheduling, supervising, and overseeing nurses to ensure medications were administered; ensure the accuracy of records of medications and treatments administered; and communicate with the physician any potentially significant medical complaint or observation.

## FACTUAL ALLEGATIONS

24. On December 14, 2015, Mesa County entered into a contract with Correct Care Solutions, LLC, (CCS) to provide medical and mental health care to inmates at the Mesa County Detention Center (MCDC). The contract was extended for another year on December 2, 2016, to be effective beginning January 1 through December 31, 2017. Pursuant to the contract, CCS pays for all medications and medical treatment, which creates an incentive to deny medications and medical treatment in order to profit.

25. Jesse Binam was arrested on September 2, 2017, at 9:29 p.m. for outstanding warrants. He was booked into the Mesa County Detention Center around 10:25 p.m.

26. At all times material, Jesse Binam was a pretrial detainee.

27. On September 2, 2017, at 10:34 p.m., Defendant Heather Stanford RN documented on a medical intake form that Jesse had medical and mental health conditions including depression and seizures, and that he was taking prescribed medications. It is handwritten on the form "KIB," or Keep in Booking, and to put him on benzodiazepine withdrawal. Defendant Stanford did not contact a physician, continue his prescribed psychotropic medications, or refer him to be evaluated by mental health.

5

28.     On September 3, 2017, at 1:09 p.m., Defendant Velda Havens LPN documented that she made a mental health referral for Jesse Binam because she noted he takes Klonipin and Abilify and Lexapro at least 1 to 2 years but "DOES NOT HAVE THEM HERE CAN'T GET ANYONE TO BRING MEDS IN AT THIS TIME" and that she was placing him on benzodiazepine withdrawal for Klonopin.  She also noted she would have him sign a request for information.  Defendant Lisa Marie Fabrizio signed off electronically on September 4, 2017, and thus knew of the substantial risk of serious harm in not providing Mr. Binam mental health treatment. Based on information and belief, no mental health appointment was actually made for Mr. Binam.

29.     Based on information and belief, Jesse Binam was cut off Klonopin without tapering or substitute, and no other anti-epileptic or mental health medications were started.

30.     Defendant Havens LPN created a request for information (ROI) to Mind Springs Mental Health for Jesse Binam's mental health diagnosis, treatment, medications and dosage dated September 3, 2017, but purposefully did not fax it.

31.      On September 3, 2017, at 1:24 p.m., Defendant Havens LPN documented on a "Receiving Screening" that Jesse Binam had epilepsy, and that he was currently taking Klonopin, Abilify, and Lexapro, which were marked as "not verified."  She documented that his medications were psychotropic, that he had a history of psychiatric hospitalizations "a year prior at Mind Springs," and that he had attempted suicide. She marked that she was referring him to mental health, but no referral was made, and the positive findings were not cosigned by a RN or a provider.

32. Defendant Havens LPN also created a "Withdrawal, Alcohol and Benzodiazepine Nursing Documentation Pathway" on September 3, 2017 at 1:28 p.m. She documented that Mr. Binam's duration of use of Klonopin was 2 years and his last use was 2 days prior. She ordered CIWA scoring every 8 hours for 72 hours then twice a day for 2 days. The document was not electronically-signed by a provider or RN.

33. Klonopin is a benzodiazepine used to treat seizures, panic disorder, and anxiety.

34. Abilify is an antipsychotic used to treat schizophrenia, bipolar disorder, depression, and Tourette syndrome.

35. Lexapro is used to treat depression and generalized anxiety disorder.

36. Defendant Havens LPN did not start Jesse Binam on any of his psychotropic medications even though she knew that he suffered from depression and had attempted suicide in the past for which he was hospitalized. She was not qualified within the scope of her license to perform a nursing assessment or make medication decisions, but she did not contact a RN or MD, and she did not make a mental health referral.

37. On September 3, 2017, at 1:29 p.m., Defendant Havens LPN entered a medication order for chlordiazepoxide, a benzodiazepine, without contacting a RN or MD. Based on information and belief, this medication was never provided to Mr. Binam. Defendant Havens knew of the substantial risk of serious harm including death in stopping Mr. Binam's prescribed benzodiazepine without tapering or substitute.

38. On September 4, 2017, Jesse Binam reported to Defendant Havens LPN that he was agitated and needed something for anxiety. Defendant Havens documented that she told him to leave the office without getting a signed Request for Information. Her

chart note was e-signed by Lisa Marie Fabrizio, a mental health professional. Mr. Binam was denied access to psychotropic medications and to qualified mental health professionals.

39. Mr. Binam made two phone calls on September 6, 2017, and during both calls, he threatened to kill himself and others. It is likely that he made these statements to deputies and medical staff.

40. On September 6, 2017, around 7:30 a.m., Lt. Fog passed on information to a court deputy that Mr. Binam had stated that he wanted to be shot. At 8:30 a.m. that day, Mr. Binam had a court appearance. Based on information and belief, Mr. Binam's desire to commit suicide was not passed on to CCS employees and independent contractors, and Lt. Fog was aware that Mr. Binam was not receiving any medications for his depression and anxiety, and was suicidal.

41. On September 6, 2017, at 7:13 a.m., Megan Smith LPN ordered vitamin B1 for Jesse Binam. Dr. Holmes e-signed the order about two hours later. No psychotropic medications were ordered, and Mr. Binam was not evaluated by a mental health professional.

42. In the court room on September 6, Mr. Binam stated he wanted to blow up the courthouse and he wanted to be shot. Afterwards, in a holding cell, he slipped his belly chain off and put it around his neck in an attempt to kill himself, and banged his head against the window. On the way back to jail, he again threatened to blow up the courthouse. He threatened to hurt himself and others. After transport back to the jail, his psychotropic medications were still not started and he was not evaluated by a mental health professional.

43. At approximately 10:00 a.m. on September 6, 2017, suicide watch was started by Officer Pucket and Sgt. McCabe due to "something said at court." Still, Mr. Binam was not provided any psychotropic medications and was not evaluated by a mental health professional.

44. On September 7, 2017, at 10:38 a.m., Defendant Havens LPN finally faxed the ROI dated September 3, 2017, to Mind Springs Mental Health. Fifteen minutes later, Mind Springs faxed back Mr. Binam's medical records showing his diagnosis and prescribed medications: Lexapro, Ambilify, and Klonopin.

45. On September 7, 2017, at 11:48 a.m., Kimberly Spangrude NP entered an order for Lexapro to start the next day, September 8, 2017. No medication was provided to Mr. Binam.

46. On September 7, 2017, at 1:01 p.m., Officer Puckett reported that mental health talked to Binam at the door and informed him that he was being taken off the suicide watch, but that he was not getting his psych meds. Based on information and belief, the person who talked to Binam was Defendant Wilson and/or Defendant Fabrizio. Officer Puckett confirmed with Mental Health in private that he was to provide Binam his set of yellow inmate uniform rather than a paper, suicide watch gown, and mental health. Binam was taken off suicide watch and issued his yellow inmate clothing.

47. On September 7, 2017, at 3:58 p.m., McLeah Thrailkill ordered Ambilify to be given staring the next day, September 8, 2017. This order was signed by Nick Jellots on September 8, 2017. No medication was provided to Mr. Binam.

48. On September 7, 2017, at 4:09 p.m., Defendant Scott Wilson filled out a "Suicide Watch Initial Assessment." Jesse reported wishing he was dead or could go to

9

sleep and not wake up; he had thoughts of killing himself; and had done something to end his life within the last three months. Defendant Wilson documented that he ordered suicide watch for one day, with watch every 15 minutes. It is noted that Jesse was requesting medications to assist with stabilization, and still no medications were provided. It was noted there was no need for a referral to psychiatry.

49. Mr. Binam made a phone call on September 7, 2017, during which he threatened to kill himself and others. It is likely that he was making similar statements to detention and medical staff that were ignored.

50. On September 8, 2017 at 1:05 p.m., Defendant Wilson documented that Mr. Binam reported anxiety and depression. He noted Mr. Binam's judgment was "poor" and he was "belligerent." For medication compliance, he noted "N/A" or not applicable rather than yes or no. Based on information and belief, no medications had been provided to Mr. Binam. He ordered that Mr. Binam remain KIB-MH "at this time."

51. On September 8, 2017, at 2:27 p.m., Defendant Alissa Embree-Nicholson RN entered an order for Vistaril. She noted that Dr. Holmes was called per mental health and told the patient had an increase and anxiety and was "asking for a medication." Based on information and belief, Defendant Embree-Nicholson did not provide Mr. Binam with any medications, including Vistaril.

52. Defendants Alissa Embree-Nicholson, RN, Megan Smith, LPN, Renee Workman, RN, Britany Goss, RN, Lexi Lambert, MA/LNA, and Katelynn Hunt, MA/LNA each knew that Jesse Binam had been prescribed psychotropic medications and that he was suffering a mental health crisis with suicidal ideation, and yet they purposefully refused to provide him any medications.

53. Defendant Brittany Goss was assigned to the booking area on September 9, 2017 as Jesse Binam's mental health continued to deteriorate. She observed him have a melt down over the phone at approximately 11:15 a.m., after which he ripped off his shirt. Based on information and belief, she and/or the HSA approved of the decision to move Binam from the booking area where he could be observed, to Cedar Pod where he would be housed on the upper tier of a cell block where he could not be observed, and where he would be housed alone.

54. Based on information and belief, Sergeant Peck made the decision to move Mr. Binam to Cedar Pod, which is administrative segregation, in cell 48 on the upper tier, as punishment for his outbursts and behavior, knowing that Mr. Binam continued to be a threat to himself and others and had not been receiving his psychotropic medications. He was placed in a cell wearing his yellow inmate pants that could be used to hang himself, with places to hang himself, and without a cellmate to stop him or alert staff.

55. Jesse Binam was placed in the cell in Cedar Pod at 11:13 a.m. He was discovered lifeless at 11:32 a.m., but it took officers additional time to enter his cell and begin CPR. EMS was called and Mr. Binam was transported to the hospital at 12:01 p.m.

56. Defendant Brittany Goss filled out an Emergency Response Worksheet on September 9, 2017, at 12:58 p.m. She noted that medical was called at 1130, at which time deputies were pulling Jesse Binam out of his cell. She noted the deputies administered CPR until EMS arrived at 1141. EMS suctioned his airway and administered doses of EPI (epinephrine). At 1156 a radial pulse was palpated and EMS left with Mr. Binam at 1201.

57. At 1:03 p.m. on September 9, 2017, Defendant Goss filled out a "Self-Injurious Behavior" nursing protocol - a little late for Mr. Binam. No protocol was used when Mr. Binam begged for medications for his mental illness and warned that he wanted to commit suicide. Had the protocol been used earlier, Mr. Binam's injurious behavior (choking himself with his chains, threatening to harm himself and others) would have been documented, and he would have been placed on suicide watch for an appropriate period of time, evaluated by a health care provider, and provided his psychotropic medications.

58. Mr. Binam was transferred to St. Mary's Hospital in Grand Junction where he remained in critical care status secondary to acute respiratory failure status post asystolic arrest and multiple complications including severe neurologic injury, seizures, and worsening kidney function. He showed no evidence of significant neurological response and no response to pain.

59. Jesse Binam was pronounced dead on September 13, 2017 at the age of 37.

60. But for the failure to provide prescribed psychotropic medications and mental health treatment and/or suicide precautions, Jesse Binam would not have succeeded in asphyxiating himself on September 9, 2017, which caused brain and organ damage from which he never recovered or regained consciousness, and which caused his death on September 13, 2017.

61. Suicide is a well-known risk in jails. National standards for jails require jail administrators and/or private companies providing medical care to have a detailed written suicide prevention policy and to train staff to implement this policy.

62. The American Correctional Association Standards call for suicidal inmates to be under continual observation, and that there be a written suicide prevention and intervention program that's reviewed by a qualified medical or mental health professional that includes specific procedures for intake screening, identification and supervision of suicide-prone inmates.

63. The National Commission on Correctional Health Care Standards similarly recommends constant observation of suicidal inmates or housing with other inmates; placement in a cell as nearly suicide proof as possible without protrusions of any kind from which an inmate could hang himself and without clothing, sheets or blankets that could be used for those purposes; and that the inmate be located near the staff office and checked every five minutes while awake and every ten minutes while asleep.

64. The Defendants each ignored a known substantial risk of serious harm and purposefully failed to provide Jesse Binam with his prescribed psychotropic medications and access to mental health treatment including treatment at a higher level of care, and purposefully refused to put him on suicide watch despite his threats and attempts to commit suicide, all of which was the proximate cause of his death from hanging himself.

65. Jesse Binam died during National Suicide Prevention Week.

### FIRST CLAIM FOR RELIEF

**(Section 1983 Under the Fourteenth and/or Eighth Amendments Against the Individual Defendants)**

66. All of the above allegations are incorporated herein by reference.

67. The Defendants each were deliberately indifferent to a substantial risk of serious injury, which consisted, *inter alia,* in the following:

(a) Deliberately refusing to provide psychotropic medications even after Jesse Binam became suicidal despite the obvious substantial risk of serious harm;

(b) Deliberately refusing to take suicide precautions when Mr. Binam was threating to harm himself and others, and even after he attempted suicide, despite the obvious substantial risk of serious harm;

(c) Deliberately transferring Mr. Binam to administrative segregation knowing that he was suicidal and that he would have the means to commit suicide;

(d) Refusing to provide Mr. Binam access to a qualified mental health provider or a higher level of care.

68. As a direct result of each of the forgoing Defendants' deliberate indifference, Jesse Binam was injured and damaged in the following particulars:

(a) Loss of life, physical and mental pain and suffering, anxiety, fear, stress, distress, and loss of the chance to live a full and productive life.

(b) Loss of future income and/or earning capacity.

(c) Medical. burial, transport costs, and funeral expenses.

69. The conduct of each of the Defendants constitutes reckless or callous indifference to Jesse Binam's health, safety and welfare entitling his estate to punitive or exemplary damages against each of the Defendants in their individual capacities under color of state law.

**SECOND CLAIM FOR RELIEF**

**(Section 1983 - Municipal Liability Against Mesa County and CCS)**

70. All of the above allegations are incorporated herein by reference.

71. Jesse Binam was a pretrial detainee, and had a clearly established right under the Fourteenth Amendment to the U.S. Constitution to be free from punishment. Denying him treatment for his serious mental health needs was not rationally related to a legitimate governmental objective or was excessive with regards to that purpose. In addition, each Defendant was deliberately indifferent to a known substantial risk of serious harm as described *Supra*. The denial of mental health treatment including adequate suicide prevention precautions caused Mr. Binam's injuries and damages as described in ¶ 68, *Supra*.

72. To the extent Mesa County delegated final policy making authority for medical and mental health care at the jail to CCS, Mesa County is liable for the unconstitutional policies and customs of CCS pursuant to its nondelegable duty to provide detainees including Mr. Binam with necessary mental health treatment from qualified providers that meets a community standard of care. The unconstitutional policies or customs of CCS became the policies or customs of the county, and the county is liable if those policies or customs prove to be unconstitutional.

73. In addition, the County knew CCS was denying Mr. Binam psychotropic medications, took him off suicide watch when he was still suicidal, and refused to send him to a higher level of care. The substantial risk of serious harm in not protecting a suicidal inmate is obvious, and yet county employees allowed CCS to take Mr. Binam off suicide watch and when he acted up, punished him by sending him to administrative segregation despite the substantial risk of serious harm in putting a suicidal inmate in a cell with the means to commit suicide. Mr. Binam then committed suicide within

approximately fifteen minutes, and later died from his injuries. The County ratified these actions.

74. At all times material, CCS purposefully maintained an unconstitutional policy, practice, or custom including, among other things, the following:

    a. Purposefully cutting inmates off prescribed psychotropic medications in order to make a profit, even after the inmate becomes suicidal;

    b. Purposefully taking suicidal inmates off suicide watch, even after they attempt suicide and threaten to harm themselves and others, and refusing to send them to a higher level of care;

    c. Deliberately denying suicidal inmates access to qualified mental health providers and treatment;

    d. Directing or allowing LPNs to perform nursing assessments and make mental health decisions that are outside their scope of practice, delay starting prescribed mental health medications, refuse to contact a mental health provider for mentally-ill and suicidal inmates, and make woefully inadequate and/or inaccurate chart notes;

    e. Directing or allowing nurses to fail to utilize nursing protocols and fail to accurately document information;

    f. Refusing to investigate, correct, train, and reprimand unconstitutional behaviors, customs, and policies that resulted in serious harm to Jesse Binam.

75. There was a widespread custom at the Mesa County Detention Center in 2017 of not providing prescribed psychotropic medications, access to mental health

professionals, and suicide precautions despite the obvious substantial risk of serious harm in denying a mentally-ill inmates, including Jesse Binam, who suffered from depression and threatened suicide, with mental health treatment and suicide precautions.

76. CCS and/or Mesa County failed to enact and/or implement policies and procedures on mental health treatment and suicide prevention in the Mesa County Detention Center. This failure was the result of its deliberate indifference to the known substantial risk of suicide to inmates including Jesse Binam, which was the moving force in whole or in part in causing Jesse Binam's death. CCS and Mesa County had actual or constructive notice that the failure to enact and/or implement and/or train staff to provide psychotropic medications, access to mental health treatment, and to implement policies and procedures on suicide prevention was substantially certain to result in a constitutional violation, and it consciously and deliberately chose to disregard that risk. There was essentially a complete failure to train and/or supervise, or training and supervision that was so reckless or grossly negligent that future misconduct was almost inevitable.

77. There are systemic and widespread deficiencies by multiple providers in mental health care and treatment by CCS. The deficiencies were so widespread, purposeful, and ubiquitous as to affect all inmates with serious mental health needs at the MCDC. The need for training, supervision, and adequate staffing of the medical department to avoid the risk of serious injury and death from suicidal inmates suffering from mental illness and depression was obvious. CCS purposefully failed to adequately staff and/or train and/or supervise its staff to provide detainees, including Mr. Binam, with access to mental health treatment by a qualified medical provider and suicide

prevention precautions, all of which was the moving force in causing Mr. Binam's injuries and damages.

78. There was a direct causal link between the constitutional deprivations as aforesaid, and the inadequate training, inadequate discipline and inadequate supervision, and/or unconstitutional policies or customs of the Defendants.

79. Each Defendant's conduct was a direct cause in whole or in part of Jesse Binam's injuries and damages, which are indivisible, resulting in joint and several liability.

80. As a direct result of Mesa County and/or CCS' deliberate indifference to a serious risk of injury and death, Mr. Binam was seriously injured and damaged as stated in Paragraph 68, *Supra*.

81. The conduct of CCS constitutes reckless or callous indifference to Mr. Binam's health, safety and welfare entitling his estate to punitive or exemplary damages under color of state law.

## THIRD CLAIM FOR RELIEF

**(Wrongful Death)**

82. All of the above allegations are incorporated herein by reference.

83. The individual Defendants were each negligent in failing to provide Jesse Binam treatment or access to treatment from a qualified mental health provider for his diagnosed mental illness, especially when he became suicidal, and instead taking him off suicide watch and then sending him to administrative segregation where he had the ability to commit suicide. Each of the CCS employees and/or agents is negligent for failing to provide prescribed medications and/or access to mental health treatment, and

for failing to implement suicide precautions. Each Defendant is liable for their own acts of negligence that, in conjunction with the negligence of the other defendants, caused Jesse Binam's wrongful death.

84. Each individual Defendant was acting within the course and scope of his or her employment and thus his or her negligence is imputed to either CCS or Mesa County as a matter of law.

85. As a result of the negligence of the Defendants, Plaintiff E.C. has been injured and damaged in the following particulars:

    (a) The loss of the care, companionship and society of her biological dad, Jesse Binam.

    (b) Non-economic damages consisting of mental anguish, grief, emotional distress, and loss.

86. Plaintiff E.C. reserves the right to seek exemplary damages after sufficient discovery has been completed.

## CONCLUSION

WHEREFORE, Plaintiffs demand judgment against the Defendants in an amount which will fairly compensate Jesse Binam's Estate and his daughter for all injuries and damages as heretofore set forth, together with pre-judgment interest, litigation costs including expert witness fees, attorneys fees pursuant to § 1988, punitive or exemplary damages pursuant to §§ 1983 and 1988, and for such other and further relief as the Court may deem just and proper.

DATED this 9th day of September, 2019.

                                                        Respectfully submitted,

/s/ Cheryl Trine
Cheryl L. Trine, #38150
Trine Law Firm LLC
155 E. Boardwalk Drive #400
Fort Collins, CO 80525
Phone: 970-391-9442
Fax: 970-458-1800
Email: ctrine@trinelaw.net

**PLAINTIFF DEMANDS A JURY TRIAL TO A JURY OF SIX.**

Plaintiffs' Address:

Connie Kendall as PR of the Estate of Jesse Binam
610 N. 100 W
Springville, UT 84663

E.C. by and through her Next Friend Jennifer Chisholm
676 Brentwood Dr. #14
Pallisade, CO 81526